IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LEGEND TRADING, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> vs. <br><br> JOHN DOE, <br><br> Defendant/Counterclaim Plaintiff. | No. 25-CV-1011-CJW-MAR <br><br> **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on John Doe's motion to remand. (Doc. 14). Legend Trading, Inc. filed a resistance (Doc. 16) and Doe filed a reply (Doc. 17).

On July 2, 2025, the Court heard oral argument on the motion. (Doc. 25). At the hearing, the Court invited the parties to submit supplemental briefing.

On July 11, 2025, the parties complied and filed supplemental briefs. (Docs. 26 & 27).

For the following reasons, Doe's motion to remand (Doc. 14) is **denied**.

## I. BACKGROUND[1]

On January 9, 2025, Fidelity Bank & Trust ("Fidelity") filed a petition for interpleader in Iowa state court. (Doc. 1, at 1). Fidelity named Legend Trading and Doe as respondents in the original petition. (Doc. 4). Fidelity is incorporated in Iowa and has its principal place of business in Iowa. (*Id.*, at 1). Legend Trading is a Delaware corporation with its principal place of business in California. (*Id.*). Doe is an individual who resides in Iowa. (*Id.*).

---

[1] The facts are generally taken from the various petitions and crossclaims, which are only allegations at this point, and not established facts. (*See* Docs. 4, 8, & 9).

1

In the petition, Fidelity describes a fraud scheme linked to cryptocurrency ("crypto") which involves the three parties. Legend Trading is in the crypto business, offering certain products relating to the trading of crypto. (*Id.*, at 2). At some point before April 2024, bad actors enticed several victims, including Doe, to liquidate their investment accounts and put the money into crypto. (*Id.*).

In February 2023, Doe signed up for a Legend Trading account. (*Id.*). Over the following two months, Doe placed several orders for crypto, which involved funds being wired from Doe's account at Fidelity. (*Id.*, at 2–3). Some of the funds were wired to JP Morgan Chase ("Chase"). (*Id.*). It appears that after Doe received the crypto in his "wallet" an unknown individual, presumably the bad actor, quickly transferred the crypto to a wallet held by the unknown individual. (*Id.*, at 3).

On April 10, 2023, Doe attempted to recall several wire transfers sent to Chase. (*Id.*). Chase suspended some amount of funds, and returned them to Fidelity. (*Id.*).

Legend Trading claims the returned funds belong to Legend Trading. (*Id.*). Doe claims the funds belong to Doe. (*Id.*). Legend Trading communicated to Fidelity its intent to initiate legal action in the event Fidelity released the funds to Doe. (*Id.*, at 4).

On January 9, 2025, Fidelity filed an interpleader action in Iowa state court, naming Legend Trading and Doe as respondents. (Doc. 4). Fidelity specifically noted in its petition that it "does not claim ownership of, title to, or interest in any of the funds that are the subject of this action." (*Id.*, at 4). Fidelity claimed that it was ready and willing to pay the funds to the proper party, but felt that it could not "safely release the funds to either Respondent without subjecting itself to multiple and conflicting claims." (*Id.*).

On January 15, 2025, Fidelity perfected service upon Legend Trading. (Doc. 1-3, at 11).

2

Case 2:25-cv-01011-CJW-MAR    Document 28    Filed 07/18/25    Page 2 of 12

On February 14, 2025, Legend Trading filed an answer to Fidelity's petition, which included a single-count crossclaim against Doe for declaratory judgment. (Doc. 8). In its answer, Legend Trading stated that it "does not object to an order discharging Fidelity and absolving it from any obligations as to the deposited funds." (*Id.*, at 5). In its crossclaim against Doe, Legend Trading requests a declaratory judgment holding that Legend Trading is entitled to the funds at issue in the interpleader action. (*Id.*, at 14).

On February 20, 2025, Fidelity filed a motion requesting the Iowa district court file an order authorizing Fidelity to deposit the funds at issue with the clerk of court, discharging Fidelity as a party to this suit, and absolving Fidelity from any obligations regarding the funds. (Doc. 1-3, at 148–49). Fidelity noted in its motion that Legend Trading indicated in its answer that it did not contest to the relief sought in Fidelity's motion, and that counsel for Doe had indicated that Doe does not resist Fidelity's motion.

On February 21, 2025, the day after Fidelity filed its motion, the Iowa district court entered an order granting the motion. The court authorized Fidelity to deposit the funds at issue with the clerk of court. (*Id.*, at 154). The order also dismissed Fidelity as a party, and absolved Fidelity from any obligations regarding the funds.

On February 28, 2025, Doe filed an answer to Fidelity's petition, an answer to Legend Trading's crossclaim, and Doe's own crossclaims—eleven of them—against Legend Trading. (Doc. 9). Doe accuses Legend Trading of a laundry list of failures, which primarily involve accusations that Legend Trading failed to adequately investigate (its customers, their accounts, potential bad acting interlopers, issues with Doe's transactions specifically, etc.), that Legend Trading failed to disclose risks (with crypto's value, with crypto scams, and with lack of regulation in the area), and that Legend Trading failed to take sufficient measures to prevent fraud on its platforms. (*Id.*, at 20–

3

22).  Many of Doe's crossclaims are claims related to these accusations: consumer fraud, negligence, breach of fiduciary duty, contract-related claims, and the like.

Importantly, Doe brings one of his crossclaims against Legend Trading under the federal Commodity Exchange Act ("CEA").  (Doc. 9, at 26–27) (citing 7 U.S.C. §§ 6b(a) & 13c(a)).

On March 20, 2025, Legend Trading removed the case to this Court.  (Doc. 1). Legend Trading removed based upon federal question jurisdiction, citing Doe's CEA claim.  (*Id.*, at 2–3).

On April 21, 2025, Doe filed a motion to remand the case to state court.  (Doc. 14).

## II. DISCUSSION

Legend Trading removed this case from state court under Title 28, United States Code, Section 1446.  Under Section 1446, a party must generally remove a civil action "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"  28 U.S.C. § 1446(b)(1).  "[I]f the case stated by the initial pleading is not removable," however, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).  In sum, a defendant must generally remove a case within 30 days of its receipt of the document showing that the case is removable, whether it be at the outset of the case or later.

Doe argues that Legend Trading did not remove the case within 30 days of the case becoming removable.  Legend Trading disagrees.  The issue here, then, is when this case first became removable.

4

A civil action filed in state court can be removed to federal court if "the district courts of the United States have original jurisdiction[.]" *Id.* § 1441(a). "Original jurisdiction" means "the case must satisfy the same requirements as if it had initially been filed" in federal court. *M&B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109 (8th Cir. 2023) (internal quotation omitted). The two common bases for federal court jurisdiction in a civil case are diversity jurisdiction and federal question jurisdiction. *See* 28 U.S.C. §§ 1331 & 1332.

Doe argues that this case was removable at the outset—when Fidelity served Legend Trading with the complaint. (Doc. 14-1). Fidelity served Legend Trading on January 15, 2025. If the case was immediately removable, as Doe argues, then Legend Trading's deadline to remove was February 14, 2025, which passed before Legend Trading removed the case on March 20, 2025.

Doe pins his argument on diversity of citizenship jurisdiction. There are two types of interpleader in federal court: statutory interpleader, brought under 28 U.S.C. § 1335; and rule interpleader, brought under Federal Rule of Civil Procedure 22. They have different requirements as it relates to diversity jurisdiction. As the Court stated at oral argument, and Doe agreed, generally "interpleader actions brought under state law in state courts and then removed to federal court must satisfy the requirements of rule interpleader[.]" 13F *Wright & Miller's Federal Practice & Procedure* § 3636 (3d ed. updated May 2025). Legend Trading acknowledges this as well in its supplemental brief. (Doc. 26, at 2). Fidelity commenced this case as an interpleader action in state court, so any removal based upon the interpleader claim would have been required to comply with the requirements of Rule 22 interpleader.

Diversity jurisdiction in a Rule 22 interpleader action "requires that the plaintiff . . . be of diverse citizenship to all defendants, and that the amount in controversy be

5

greater than $75,000."[2] *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 976–77 (8th Cir. 2016). That is, the stakeholder must have different citizenship from each claimant. *See id.* at 977 ("Diversity of citizenship is undisputed: the claimants are both citizens of Missouri and the stakeholder, Federated, is a citizen of Minnesota."). The "absence of diversity of citizenship between or among the claimants is irrelevant in rule interpleader cases." Wright & Miller, *supra*, § 3636. "Existing law is relatively uniform that, in Rule 22 interpleader, a stakeholder diverse from the claimants supports diversity jurisdiction." *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 625 (5th Cir. 2019). *See also Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000) ("[A] federal court has diversity jurisdiction over an interpleader action brought pursuant to the Rule so long as the stakeholder . . . is diverse from every claimant.").

In this case, the rule is not the only important part—the reason for the rule matters too. "The reason that diversity in Rule 22 interpleader cases is measured between the stakeholder and the claimants is that the stakeholder has its own interest in the case—to be relieved of double or multiple liability." *Weaver*, 939 F.3d at 625 (citing *Stewart Oil Co. v. Sohio Petroleum Co.*, 315 F.2d 759, 761–62 (7th Cir. 1963)). Wright and Miller explain, in a similar context, that "even a disinterested stakeholder has a very real interest in the first stage of an interpleader action." Wright & Miller, *supra*, § 1710. The Eighth Circuit has explained that "the right of a stakeholder to be relieved of vexation, the danger of multiple liability, and the responsibility of undertaking to decide, at his peril, which of two or more adverse claimants is entitled to money or property in his hands, has the effect of making him a real party in interest." *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 555 (8th Cir. 1940). Thus, the reason diversity is measured in a

---

[2] The parties appear to agree that the jurisdictional minimum, $75,000, has been met, although the specific amounts have all been redacted in the filings in this Court's docket, so the Court has no way to verify this. Doe's problem here, though, is the citizenship of the parties, and not the amount in controversy.

6

Rule 22 interpleader action between stakeholder and claimants is because the stakeholder has an interest; that is, the stakeholder wants to avoid multiple parties (i.e., the claimants) making claims, the stakeholder potentially making the wrong call, and liability ending up in the stakeholder's lap.[3] Even if the stakeholder makes the correct call, it may be subjected to litigation from the other claimant(s). Under this line of thinking, until a stakeholder is clear of the possibility of multiple competing claims against it, the stakeholder is a real party with an interest in the case.

Here, under the general diversity jurisdiction rule and reasoning, there was clearly no diversity of jurisdiction regarding the interpleader action. Fidelity is a citizen of Iowa, Doe is a citizen of Iowa, and Legend Trading is a citizen of Delaware and California. Again, for Rule 22 interpleader, diversity of citizenship requires the stakeholder to have diverse citizenship from all claimants. Here, the stakeholder, Fidelity, is a citizen of Iowa, as is one of the claimants, Doe. Thus, under the standard computation of diversity jurisdiction in Rule 22 interpleader actions, there was no diversity of citizenship at the outset. With no diversity of citizenship, there was no federal court original jurisdiction, which means the case was not removable at the outset, contrary to Doe's argument.

But Doe makes an argument separate from the traditional path. Doe argues that Fidelity is, and has always been, a "nominal party" in this lawsuit. (Doc. 14-1, at 4). There is a separate line of cases standing for perhaps a more general proposition that nominal parties' citizenship may be ignored in determining diversity of jurisdiction issues. *See, e.g.*, *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 404

---

[3] Indeed, Rule 22 may require this line of reasoning. Under the rule, a plaintiff may only initiate an interpleader action when there are "persons with claims that may expose a plaintiff to double or multiple liability[.]" Fed. R. Civ. P. 22(a)(1). Given the rule's language, one could argue that the stakeholder is necessarily an interested party, with the interest of avoiding multiple liability—otherwise, they could not file an action as a plaintiff under Rule 22.

(8th Cir. 1977). This rationale comes from *City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941), where the Court instructed that federal courts have a duty "to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Id.* at 69 (internal quotations omitted). Some courts have applied this principle to interpleader cases, stating, for example, that in interpleader cases, "the nominal plaintiff is merely formal and should be disregarded for purposes of determining diversity." *Tune, Entrekin & White, P.C. v. Magid*, 220 F. Supp. 2d 887, 889 (M.D. Tenn. 2002). Under this line of thinking—especially under the rigid rule espoused by the *Magid* court— Fidelity would be considered merely a "formal" or "nominal" party, its citizenship would be disregarded for the purposes of determining diversity here, and the case would potentially have been removable at the outset, because Doe and Legend Trading are diverse parties. Whether the case was truly removable would still depend on which party would be considered the plaintiff and which party would be considered the defendant in any realignment as well. In sum, though, if Fidelity was a nominal party from the outset, then the case may have been removable, and Legend Trading may have missed its deadline.

The issue, then, is which principle takes the day in this case. Doe relies, at least in part, on *Cramer v. Phoenix Mutual Life Insurance Co. of Hartford*, 91 F.2d 141 (8th Cir. 1937). Indeed, the *Cramer* court stated that in "interpleader proceedings the claimants are the real contestants and their citizenship, and not that of the stakeholder, determines jurisdiction." *Id.* at 146. But context is important. The important context for the *Cramer* case is the fact that the interpleader action was brought under the statute, and not under the rule. *See id.* ("The statute does not mention the citizenship of the stakeholder, but provides that the bill of interpleader must allege that two or more adverse claimants, citizens of different States, are claiming to be entitled to [the benefits.]") (citation modified). Still, the court generally spoke of the stakeholder in an interpleader

8

action as "disinterested" and stated that stakeholders are "usually held to be a merely nominal party whose citizenship does not affect the question of federal jurisdiction." *Id*.

But a few years after *Cramer*, in 1940, the Eighth Circuit decided a case seemingly pointing the other way. In *Hunter*, the court confronted a situation fairly similar to the facts here, and held that the stakeholder was a real party in interest. 111 F.2d at 555. *Hunter* is the case in which the Eighth Circuit stated that "the right of a stakeholder to be relieved of vexation, the danger of multiple liability, and the responsibility of undertaking to decide, at his peril, which of two or more adverse claimants is entitled to money or property in his hands, has the effect of making him a real party in interest." *Id*. But, again, context is key. As Doe points out in his supplemental brief, the stakeholder in *Hunter* had more at stake—the stakeholder requested attorney's fees in the pleadings, and one of the claimants appears to have requested that the stakeholder be subjected to penalties and attorney's fees under state law. (Doc. 27, at 4) (citing *Hunter*, 111 F.2d at 554–55). Thus, the stakeholder in *Hunter* was more "interested" than Fidelity is here.

These two Eighth Circuit cases are fairly representative of the caselaw in this area. Neither is directly on point, and both contain language, which could reasonably be considered dicta in both cases, standing for opposite principles. *Cramer*, in the context of statutory interpleader, says stakeholders are generally considered nominal parties. *Hunter*, in the context of general diversity of citizenship principles, as here, says a stakeholder is a real party in interest, mainly because of the peril of multiple liability— but the stakeholder in *Hunter* had more at stake than the stakeholder here. Modern cases involve this dichotomy as well. In *Madison Stock Transfer, Inc. v. Exlites Holdings International, Inc.*, 368 F. Supp. 3d 460, 474–75 (E.D.N.Y. 2019), the court utilized the straightforward analysis of traditional diversity in Rule 22 interpleader cases, simply analyzing whether the stakeholder was diverse from all claimants. But in *Thrivent*

9

*Financial for Lutherans v. DeWilde*, Case No. 20-cv-00956-DWD, 2021 WL 7907674, at *3 (S.D. Ill. June 2, 2021), the court held that the matter in controversy was between the claimants in a Rule 22 interpleader action, and the stakeholder was simply a nominal party whose citizenship was to be ignored for the purpose of determining diversity jurisdiction. The *Thrivent* opinion describes the inconsistency of the caselaw in this area fairly comprehensively and concisely, summarizing it by stating that "there is divergence of view as to whether it is appropriate to disregard the lack of diversity among the claimants and instead consider only whether diversity exist between the plaintiffs and defendants." *Id.* at *2.

The Court sides here with Legend Trading and with the courts holding that diversity is present when the stakeholder is diverse from the claimants. First, the Eighth Circuit case more on point is *Hunter*. Admittedly, *Hunter* can be distinguished factually. Between *Hunter* and *Cramer*, however, *Hunter* is the only case which is analyzed under the same diversity principles in which this case must be analyzed. And the *Hunter* case says stakeholders are generally interested because of the threat of multiple liability. *See Hunter*, 111 F.2d at 555. Additionally, the Court is persuaded by the general reasoning that stakeholders are interested because of the threat of multiple liability, at least until the claimants expressly state that they have no claim against the stakeholder.[4] Indeed, Fidelity's conundrum in this very case illustrates a stakeholder's potential peril fairly

---

[4] In a similar context, one court has framed the issue as whether to realign the parties. *See Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 870, 874–75 (E.D. Mich. 1999). The *Aetna* court stated that the circuits are split on this issue, and that the Eighth Circuit uses the "substantial dispute" test. *Id.* at 875 (citing *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866 (8th Cir. 1966)). According to the *Aetna* court, under the substantial dispute test, "realignment is improper if there is any substantial conflict between opposing parties." *Id.* This indeed appears to be a reasonable reading of the *Universal Underwriters* case. *See Universal Underwriters*, 367 F.2d at 870–01. The parties have not briefed this issue, and the context of the case is different than here, so the Court is not resting its conclusion on these cases or this test. But it is consistent with the Court's holding here.

well. Allegedly, Legend Trading had signaled that it would sue Fidelity if Fidelity released the funds to Doe. It does not take a leap of imagination to assume that the same can be said about Doe if Fidelity had released the funds to Legend Trading. Thus, Fidelity had a real interest in the matter because of the threat of multiple conflicting liabilities.

Here, then, Legend Trading's removal was proper. Under the Court's holding, Fidelity, as stakeholder, was an interested party at the outset. If Legend Trading had attempted to remove the case at that point, a federal court would not have had original jurisdiction, because the stakeholder, Fidelity, was not diverse from one of the claimants, Doe. Thus, the case was not removable at the outset.

The case only became removable later. The case may have become removable when Fidelity filed its motion to be dismissed from the case (noting that neither of the claimants objected to Fidelity's dismissal or to the Court absolving Fidelity from obligations). At that point, it could be argued that Legend Trading was on notice that Fidelity was no longer an interested party because all claimants agreed to Fidelity's dismissal. The same could be said for the same reasons for the date on which the Court granted Fidelity's motion, dismissing Fidelity, and absolving it of any obligations. There may have been diversity of citizenship jurisdiction at that point, because Fidelity had no interest, and the only controversy was between Doe and Legend Trading, who are citizens of different states. A third possibility for when the case became removable was when Doe filed his answer and crossclaims, stating a claim under a federal statute, which would confer federal subject matter jurisdiction under the federal question statute. The Court need not decide which of these actually made removal proper because Legend Trading removed the case within 30 days of each. The first of these events—Fidelity's filing of its motion—occurred on February 20, 2025. Legend Trading removed the case on March 20, 2025, which is within 30 days of February 20, 2025. Legend Trading,

11

therefore, removed the case within 30 days of the case becoming removable, as required by statute. *See* 28 U.S.C. § 1446(b)(3).

Legend Trading argues other bases for denying Doe's motion, including the so-called "revival" exception, which is judicially created. (Doc. 16, at 9–11). Doe argues the Court should not adopt this exception, and even if it does, the exception does not apply here. (Doc. 17, at 4–5). The Court need not decide this issue. The Eighth Circuit has not addressed the exception, and it does not necessarily appear to have a basis in the statutory language. This Court need not decide whether such an equitable exception is available or would apply in this case, as the Court's conclusion on the issue of the timing and availability of removal determines the outcome.

Thus, Doe's motion to remand (Doc. 14) is **denied**.

### III. CONCLUSION

For these reasons, the Court **denies** Doe's motion to remand. (Doc. 14).

**IT IS SO ORDERED** this 18th day of July, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

12